MORELAND, RESPONDENT, *v.* MONARCH MINING CO. ET AL., DEFENDANTS; THE CENTRAL STATE BANK, APPELLANT.

(No. 3,995.)

(Submitted January 7, 1919. Decided January 20, 1919.)

[178 Pac. 175.]

*Attachment—Intervention—Rights of Third Party Claimants— Remedies—Statutes—Adoption from Other States—Presumptions—Appeal—District Courts—Jurisdiction.*

Appeal and Error—Effect of Perfection of Appeal—District Courts—Jurisdiction.
1. After an appeal had been perfected by intervener from a judgment dismissing his complaint, the district court lost jurisdiction of the

On right of third persons who claim property to intervene in attachment action, see note in 23 L. R. A. (n. s.) 536.

cause so far as his rights were concerned, and was without authority subsequently to decree that he was not entitled to any of the funds in controversy in the action in which he sought to intervene.

Attachment—Intervention—Right of Third Party Claimant.
2. A third party who claimed to own property which had been attached to secure any judgment which might be recovered in an action, had such an interest in the subject matter of the litigation as to entitle him under section 6496, Revised Codes, to intervene and have his rights determined.

Statutes—Adoption from Other State—Presumptions.
3. When a statute is adopted from another state, the presumption is that the legislature adopts the interpretation placed upon it by the highest court of the state from which it is adopted.

Attachment—Intervention—Alternative Remedies—Effect.
4. The fact that a party claiming an interest in attached property may have a remedy, after seizure or sale, under section 6673, Revised Codes, or by an action in conversion or replevin, does not deprive him of his right to intervene in the action in which the attachment was procured.

Intervention—Purpose of Legislation.
5. The purpose of section 6496, Revised Codes, permitting any person to intervene in an action if he has an interest in the subject matter in litigation, is to avoid circuity of action and multiplicity of suits.

[As to who may become interveners, see note in 15 Am. Dec. 162.]

*Appeal from District Court, Lewis and Clark County; J. M. Clements, Judge.*

ACTION by I. S. Moreland against the Monarch Mining & Milling Company, a corporation, wherein the Central State Bank of White Sulphur Springs intervened. From a judgment dismissing the complaint in intervention, and from a subsequent one for plaintiff for the amount claimed in his complaint, intervener appeals. Reversed and remanded.

Cause submitted on brief of counsel for Appellant.

*Mr. John A. Shelton,* for Appellant.

MR. JUSTICE HOLLOWAY delivered the opinion of the court.

This action was instituted by the plaintiff to recover from the Monarch Mining & Milling Company $1,053.70 alleged to be due for money paid out for the use and benefit of the defendant at its special instance and request, and certain moneys in the possession of the American Smelting & Refining Company at

East Helena were attached to secure the payment of any judgment which might be recovered. Before the case was ready for trial, the Central State Bank of White Sulphur Springs filed a complaint in intervention claiming the attached property as its own. To this complaint a general demurrer was interposed and sustained, and, the intervener declining to plead further, a judgment was rendered and entered on September 2, 1916, dismissing the complaint. From that judgment the intervener appealed. Thereafter, on November 11, 1916, the default of the defendant, Monarch Mining & Milling Company, was entered, and a judgment rendered in favor of plaintiff for the amount claimed in his complaint. This second judgment further decreed that the intervener "do have and recover nothing in this action, and that it is not entitled to any of the funds in controversy." From that judgment the intervener likewise appealed.

1. It is elementary that when the appeal was perfected from [1] the judgment dated September 2, the district court lost jurisdiction of the cause in so far as the rights of the intervener were involved. (*Glavin* v. *Lane,* 29 Mont. 228, 74 Pac. 406; *Hynes* v. *Barnes,* 30 Mont. 25, 75 Pac. 523; *Molt* v. *Northern Pac. Ry. Co.,* 44 Mont. 471, 120 Pac. 809.)

2. It is the next contention of the Central State Bank that [2] it had the right to intervene and have its claim to the attached property adjudicated in the action by Moreland against the Mining Company. Section 6496, Revised Codes, provides.: "Any person may, before the trial, intervene in an action or proceeding who has an interest in the matter in litigation, in the success of either of the parties, or an interest against both." The intervention thus sanctioned was unknown to the common law or to the ancient equity practice. It is distinctively of civil law origin, and was authorized in this country first by the early statutes of Louisiana, in which state the Code Napoléon constitutes the basis of jurisprudence. Those statutes are codified in the Louisiana Code of Civil Procedure of 1839, Articles 389–394,

and, in substance at least, were copied into the laws of California and other western states, including Montana.

The original statute in Louisiana limited the right of intervention to one who had an interest in the success of either party to the original action, but after the decision in *Brown* v. *Saul,* 4 Mart. (n. s.) 434, 16 Am. Dec. 175, the statute was amended and its provisions enlarged to include a person whose interest is antagonistic to both parties.

In 1820 the Louisiana court, without specific reference to the statute then in force, recognized the right of a third party to intervene and have determined his claim of ownership to the attached property.    (*Lee* v. *Bradlee,* 8 Mart. (o. s.) 20.)

In *Brown* v. *Saul* above, the right of a mere contract creditor to intervene was denied, and in *Gasquet* v. *Johnson,* 1 La. 425, the same rule was applied to a junior attaching creditor.    In *West* v. *His Creditors,* 8 Rob. 123, decided in 1844, the court reaffirmed the decision in *Lee* v. *Bradlee.*

These conclusions may have been influenced, to some extent at least, by other provisions of the Louisiana Code (Articles 395–399) not found in the statutes of California or Montana, but, whether they were or not, they reflect upon the state of the law at the time the Louisiana statutes were adopted by California.

Later, in *New Orleans C. & B. Co.* v. *Beard,* 16 La. Ann. 345, 79 Am. Dec. 582, the court definitely determined that judgment creditors of the defendant, who had junior liens upon the attached property by reason of their seizure of it under *fieri facias* issued on their judgments, had such direct legal interests as authorized them to intervene in the attachment suit, citing Articles 389 and 390 as authority for the decision.

In *Cobb* v. *Depue,* 22 La. Ann. 244, *Claflin Co.* v. *Feibelman,* 44 La. Ann. 518, 10 South. 862, and *Commission Co.* v. *Bond,* 44 La Ann. 841, 11 South. 220, the right of a junior attaching creditor to intervene was reaffirmed; and in *Field* v. *Harrison,* 20 La. Ann. 411, and *McCarthy* v. *Baze,* 26 La. Ann. 382, the

right of a third party, who claimed the attached property, to intervene was upheld.

In *Horn* v. *Volcano Water Co.*, 13 Cal. 62, 73 Am. Dec. 569, the right of a simple contract creditor to intervene in a mortgage foreclosure suit was denied, but judgment creditors having junior liens were permitted to intervene. Justice Field, speaking for the court, said: "The interest mentioned in the statute, which entitles a person to intervene in a suit between other parties, must be in the matter in litigation and of such a direct and immediate character that the intervener will either gain or lose by the direct legal operation and effect of the judgment" (citing *Gasquet* v. *Johnson,* and *Brown* v. *Saul,* above). However much this language may apparently restrict the meaning of the statute, that it was intended to be understood in the light of the facts of the case then before the court, and not otherwise, is apparent, for in *Davis* v. *Eppinger,* 18 Cal. 379, 79 Am. Dec. 184, judgment creditors of the defendant, with liens inferior to the attachment lien of the plaintiff, intervened, and their right to do so was upheld, Chief Justice Field concurring.

In *Speyer* v. *Ihmels,* 21 Cal. 281, 81 Am. Dec. 157, the question whether a junior attaching creditor has such interest as authorizes him to intervene was set at rest. The opinion by Justice Norton was concurred in by Chief Justice Field. The court said: "Although the interveners have not a claim to or lien upon any property which is the direct subject of litigation in this action, they have a lien upon property which is held subject to the results of the litigation, and which would be lost to the interveners if the original action should proceed to judgment and execution. If the case does not fall within the precise definition of the cases in which intervention takes place, as given in section 659, and as explained in the case of *Horn* v. *Volcano Waterworks,* 13 Cal. 62, it is substantially within the object provided for by that section, and as that is a law only regulating mode of procedure and not affecting rights of property, we think the interpretation given to it in the case of *Davis* v.

*Eppinger* should not be changed." The rule was again observed in *Coghill* v. *Marks,* 29 Cal. 673.

In *Kimball* v. *Richardson-Kimball Co.,* 111 Cal. 386, 43 Pac. 1111, the subject was again before the court, and was dismissed with the observation: "That, under our Code, an attachment or execution creditor has a right to intervene, and upon a proper showing defeat the lien of a prior attaching creditor, we regard as too well settled to need further discussion (*Davis* v. *Eppinger,* 18 Cal. 378, 79 Am. Dec. 184; *Speyer* v. *Ihmels,* 21 Cal. 280, 81 Am. Dec. 157; *Coghill* v. *Marks,* 29 Cal. 673; *Coffey* v. *Greenfield,* 55 Cal. 382)"—and this language was quoted approvingly in *McEldowney* v. *Madden,* 124 Cal. 108, 56 Pac. 783.

It would seem that if the interest of a junior attaching creditor is sufficient to authorize him to intervene, for the stronger reason should it be held that the interest of a third party, who claims to own the attached property, justifies him in intervening, and such was the holding in *Dennis* v. *Kolm,* 131 Cal. 91, 63 Pac. 141, in *Potlatch Lumber Co.* v. *Runkel,* 16 Idaho, 192, 18 Ann. Cas. 591, 23 L. R. A. (n. s.) 536, 101 Pac. 396, and in *Houston R. E. I. Co.* v. *Hechler,* 44 Utah, 64, 138 Pac. 1159. To the same general effect are the decisions from Washington. (*Langert* v. *Brown,* 3 Wash. Ter. 102, 13 Pac. 704; *Happy* v. *Prickett,* 24 Wash. 290, 64 Pac. 528; *Perkins* v. *Bailey,* 38 Wash. 46, 107 Am. St. Rep. 831, 80 Pac. 177.)

In Minnesota, New Mexico and Nebraska like statutory provisions were held to exclude from the classes of persons qualified to intervene the junior attaching creditor and the third party who claims the attached property. (*Lewis* v. *Harwood,* 28 Minn. 428, 10 N. W. 586; *Meyer & Son* v. *Black,* 4 N. M. (Johns.) 190, 16 Pac. 620; *Danker* v. *Jacobs,* 79 Neb. 435, 112 N. W. 579.) In other jurisdictions the courts have permitted the claimant of the attached property to intervene in the principal suit without referring his right to do so to any specific statutory provision. (See note, 18 Ann. Cas. 594.)

The statutes of Idaho, Montana, Utah and Washington are identical, and all were borrowed from California after the high-

est court of that state had placed its construction upon the corresponding provision, in *Speyer* v. *Ihmels* and *Coghill* v. [3] *Marks,* above. When our legislature adopts a statute from another state, the presumption will be indulged that it adopts, as a part of the statute, the interpretation theretofore placed upon it by the highest court of that state. (*Miller* v. *Miller,* 47 Mont. 150, 131 Pac. 23.)

From the date the writ of attachment is levied, the property seized is impressed with a lien (sec. 6687, Rev. Codes) which continues in force until judgment, and, if the judgment is in favor of the party procuring the attachment, the property is automatically subjected to sale in satisfaction of the judgment [4] (sec. 6675, Rev. Codes); and, while it is true that the seizure, or even the sale, of A's property for B's debt does not affect the title of the true owner who may proceed under section 6673, Revised Codes, or have his appropriate remedy in conversion or replevin, he is not required to pursue any of these courses, and the fact that he has an alternative remedy does not reflect upon his right to intervene. (*Coffey* v. *Greenfield,* [5] 55 Cal. 382.) It was for the purpose of avoiding circuity of action and multiplicity of suits that section 6496 was enacted. (*Potlatch Lumber Co.* v. *Runkel,* above.)

Our conclusion is that the Central State Bank was entitled to intervene in this action.

The judgment of September 2, 1916, is reversed and the cause is remanded, with directions to overrule the demurrer to the complaint in intervention. The judgment of November 11, 1916, in so far as it assumes to adjudicate the rights of the intervener, is reversed.

*Reversed and remanded.*

MR. CHIEF JUSTICE BRANTLY and MR. JUSTICE COOPER concur.