JOHN THIELEN, Appellee, v. MARTIN SCHECHINGER, SR., et al.,
Appellees; PANAMA SAVINGS BANK, Intervener, Appellant.

No. 40370.

APRIL 14, 1930.

*White & White,* for appellant.

*Bennett Cullison,* for John Thielen, appellee.

FAVILLE, J.—On September 6, 1929, the appellee commenced
his action against the defendant Schechinger, and caused an at-
tachment to be issued and levy to be made on certain real estate
belonging to said defendant. On October 2, 1929, the defendant
Schechinger filed his answer, and also a counterclaim on the at-
tachment bond, alleging that the grounds upon which said writ
of attachment was sued out were untrue. While said action was
pending, to wit, on November 8, 1929, the defendant Schechinger
confessed judgment in favor of the intervener. On November

12, 1929, judgment was rendered against the defendant Schechinger in favor of the plaintiff in the attachment proceedings, and said judgment was established as a lien on the property of said defendant from the date of said attachment, to wit, September 6, 1929. On November 14, 1929, the appellee caused a general execution to issue, and levy was made thereunder upon the attached property. Thereafter, to wit, on December 26, 1929, the intervener filed its petition of intervention, wherein it set up its said judgment against the defendant Schechinger, and alleged that said writ of attachment was illegal for the reason that the grounds set forth in the petition of the appellee for the issuance of said attachment,—to wit, that the defendant was disposing of his property with intent to defraud his creditors,—did not exist. Issue was joined by the appellee upon the petition of intervention, and upon hearing, the court dismissed said petition of intervention; and it is from said ruling that the intervener prosecutes this appeal.

I. The ultimate question for our determination is whether or not an intervener in an attachment suit can question the truthfulness of the statutory grounds of attachment alleged in the petition under which the writ of attachment was issued. The appellant relies upon the provisions of Section 12136, Code, 1927, which is as follows:

"Any person other than the defendant may, before the sale of any attached property, or before the payment to the plaintiff of the proceeds thereof, or any attached debt, present his petition verified by oath to the court, disputing the validity of the attachment, or stating a claim to the property or money, or to an interest in or lien on it, under any other attachment or otherwise, and setting forth the facts upon which the claim is founded."

Code Section 12137 is as follows:

"The petitioner's claim shall be in a summary manner investigated. The court may hear the proof or order a reference, or may impanel a jury to inquire into the facts. If it is found that the petitioner has a title to, a lien on, or any interest in such property, the court shall make such order as may be necessary to protect his rights."

It is appellant's contention that by reason of the statute he is entitled to intervene in the proceedings and "dispute the validity of the attachment," and that he may do so by traversing the allegations of the petition in respect to the grounds of the attachment. The proceedings in respect to attachment are statutory, and are embodied in Chapter 510 of the Code of 1927.

Code Section 12091 is as follows:

"The fact stated as a cause of attachment shall not be contested in the action by a mere defense. The defendant's remedy shall be on the bond, but he may in his discretion sue thereon by way of counterclaim, and in such case shall recover damages as in an original action on such bond."

Under this section it is clear that the facts stated as a ground for the attachment cannot be contested by the *defendant* in the action by merely interposing the defense of denial, or by answer specifically traversing the allegations of the petition with respect to said grounds of attachment. Under Code Section 12139, a defendant in an attachment case may move to discharge the attachment at any time before trial "for insufficiency of statement of cause thereof;" but this remedy is only available to the defendant in the attachment suit. An intervener has no standing to file such a motion. Also, under Section 12091, a defendant's remedy for damages in an attachment action may be by a separate action on the bond, or he may counterclaim on the bond in the original action; but in either event, the defendant in the case is limited to a recovery *on the bond,* and cannot traverse the grounds of the attachment by mere defense to the action. Such is the statute, and such is our holding.

In *Peters v. Snavely-Ashton,* 157 Iowa 270, we said:

"In the absence of defect in the proceedings or bond, a motion to discharge the writ will not lie. The alleged grounds of an attachment cannot be controverted by evidence for the purpose of quashing the writ. They can be traversed in the main action only by a counterclaim on the bond."

In *Security Sav. Bank v. Cimprich,* 199 Iowa 1061, it is said:

"The contention is that, inasmuch as he is resident in the state of Iowa, no judgment can be entered against him except

after personal service of original notice, and that a notice by publication cannot be effective to confer jurisdiction upon the court over an actual resident of the state. This ground of attack upon the jurisdiction of the court is an attempt to traverse those averments of the petition which constitute the grounds of attachment. It has been our universal holding for more than fifty years that such grounds are not subject to traverse, except in an action upon the attachment bond. This is the attachment defendant's sole remedy for wrongful issuing of an attachment. He may avail himself of it by an action on the bond, and such action may be set up as a counterclaim in the attachment suit, or it may be prosecuted independently of the attachment suit.''

It is the contention of the appellant, however, that, under Section 12136, an intervener is given the right of ''disputing the validity of the attachment,'' and may do so by a petition of intervention traversing the allegations of the petition as to the grounds of the attachment.

The provisions of the statute permitting intervention in an attachment suit and providing that the intervener may present his petition ''disputing the validity of the attachment'' first became a part of our statutory law in the Revision of 1860. The precise question presented by the intervener does not appear to have been previously before this court. *Whipple v. Cass,* 8 Iowa 126, was decided before the adoption of the Revision of 1860, and hence would not be controlling, under the present statute. Section 12137 must be read in connection with 12136. Under said Section 12137, the intervener's claim shall be heard in a summary manner, and ''if it is found that the petitioner has a title to, a lien on, or any interest in such property, the court shall make such order as may be necessary to protect his rights.'' It is obvious that, where a petition of intervention is filed, the contest necessarily becomes one as to a title to, lien on, or interest in the property. An intervener in an attachment suit can have no standing unless it appears that he claims some title to, lien on, or interest in the attached property. Without an allegation showing such a status, he would be a mere intermeddler and volunteer. Therefore, his first obligation is to assert the validity of a claim to the attached property. Whether the attachment be valid or invalid, the intervener must first establish his title to, lien on,

or interest in the attached property. *Markley, Alling & Co. v. Keeney*, 87 Iowa 398. If the intervener's claim in and to the property is senior and superior to the attachment, then the attachment is "invalid" as against the intervener's rights, even though every step in the proceedings in attachment was in exact accordance with the statute. In other words, as against the claims of an intervener, the attachment may be "invalid," even though it be valid as between the attaching plaintiff and the defendant in the action. Under the statute, the intervener is permitted to dispute the validity of the attachment as creating a lien superior to the intervener's lien. But such right to "dispute the validity of the attachment" does not give the intervener the right to do what the defendant himself could not do,—namely, traverse the grounds of the petition for attachment. To recapitulate, a *defendant* in an attachment action is given the right by motion to obtain a discharge of the attachment on the ground of "insufficiency of statement of cause thereof." He may also counterclaim on the bond, or by separate action set up his claim for damages because of the wrongful issuance of the attachment. These remedies which are available to the defendant in an attachment action are matters, however, with which an intervener claiming a lien on the attached property has no concern whatever. He cannot recover on the bond for damages caused by wrongful levy of the attachment. The bond is not made for the benefit of an intervener, but only for the protection of the defendant in the attachment case. Therefore, when the statute provides that the intervener may "dispute the validity of the attachment," it does not mean that the intervener may traverse the grounds alleged in the petition as a basis for the attachment. He may, however, dispute the validity of any lien created by the attachment as being inferior to his own lien or right. To illustrate: It is possible that the intervener might have the right to question the validity of the attachment by raising the question that the service of the writ was not properly made, and hence no lien created, or that the writ of attachment was so irregular in form as to be void and ineffective to establish a lien. In every instance, however, the contest between the attaching plaintiff and the intervener is a contest over superiority of liens. The intervener has no concern with any question of "invalidity" that may affect a defendant's claim for damages on the bond.

In *Markley, Alling & Co. v. Keeney,* 87 Iowa 398, we said:

"It is said: 'The plaintiffs have not shown that they had an attachment good against the intervener.' It seems to us the proposition is not involved in this trial. The intervener's right to the property does not depend upon the character of the attachment,—that is, whether valid or invalid. He comes asking for the property as his because of his purchase before the attachment. An invalid attachment would give him no right to the property. He has no rights in the property unless he is the owner, and it is determined that he is not."

It is the general rule that the debtor alone has the right to assail the attachment on the ground that the allegations upon which the writ was issued are untrue. *Meyer, Bannerman & Co. v. Keefer,* 58 Neb. 220 (78 N. W. 506) ; *Wagner v. Wolf,* 75 Neb. 780 (106 N. W. 1024) ; *First Nat. Bank v. Greenwood,* 79 Wis. 269 (45 N. W. 810) ; 6 Corpus Juris 391, Section 884.

We do not think that Code Section 12136 and Section 12137 are intended to change this rule. Under said sections, a party having an interest in, claim to, or lien upon the attached property may intervene, and assert his claim thereto in the attachment proceedings. His claim shall be heard in a summary manner, and if he has such a title to, lien on, or any interest in said property, the court shall make such order as may be necessary to protect his rights. In such a sense, and for such a purpose, the intervener may "dispute the validity" of the attachment, but this does not give the intervener the right to contest the truthfulness of properly alleged grounds for the attachment.

Construing the statute as we do, we reach the conclusion that the trial court did not err in dismissing the intervener's petition, and the judgment is—*Affirmed.*

MORLING, C. J., and EVANS, KINDIG, and GRIMM, JJ., concur.